IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**Richmond Division**

JULIE PRIOR,

    Plaintiff,

v.                                                       Civil Case No. 3:14cv527

TEAMSTERS LOCAL 101, et al.,

    Defendants,

TEAMSTERS LOCAL 101, et al.,

    Third-Party Plaintiffs,

v.

AMERICAN FAMILY LIFE ASSURANCE
COMPANY (AFLAC),

    Third-Party Defendant.

## OPINION

This matter comes before the Court on the third-party defendant's motion to dismiss the third-party complaint. (Dk. No. 23.) Teamsters Local 101 and its president, Brian Hairfield, (collectively "Teamsters"), two of the four first-party defendants in this case, seek to implead American Family Life Assurance Company ("Aflac") as a third-party defendant under a theory of contribution. Julie Prior, the first-party plaintiff, brought claims of tortious interference with her contractual rights and business conspiracy under Virginia law and a claim of racketeering under federal law. Teamsters claims that Aflac's actions caused any damages Prior incurred as a result of the loss of her Aflac insurance customers at the Honeywell plant in Chesterfield,

Virginia. Aflac now moves to dismiss the third-party complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6).

Teamsters' claims fail under both Virginia and federal law. Virginia law bars contribution for intentional torts and requires at least potential liability on the part of the third-party defendant to the original plaintiff. Relevant federal law bars contribution for racketeering claims, and Aflac cannot commit the predicate racketeering offense alleged by Prior as a matter of law. Teamsters, therefore, may not seek contribution against Aflac.

For these reasons, the Court GRANTS Aflac's motion to dismiss the third-party complaint.

## I. STATEMENT OF FACTS[1]

Prior sells supplemental insurance as an independent contractor for Aflac, and since 1991 she has serviced accounts at the Honeywell, Inc., plant in Chesterfield, Virginia. Teamsters Local 101 represents employees at the Honeywell Chesterfield plant, and Brian Hairfield has served as its president since December 2010. In September 2011, Prior contacted Hairfield to schedule an on-site Aflac policy enrollment for Local 101 members at the plant. Hairfield told Prior that he had already signed an Agent of Record letter with Prior's regional Aflac director, Shawn Stephens, giving the Honeywell plant accounts to a new Aflac agent, Tina Shenk.[2]

---

[1] "[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). In construing a motion to dismiss, a court must take as true the facts, though not the legal conclusions, alleged in a plaintiff's complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009). A complaint should survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim only when a plaintiff has set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007).

[2] Shawn Stephens and Tina Shenk, although defendants in Prior's original complaint, do not join Teamsters in bringing the third-party complaint against Aflac.

2

According to Stephens, Hairfield demanded that Shenk be Local 101's servicing agent, because she worked as an assistant to another Teamsters officer. Prior claims that Hairfield and Shenk were romantically involved at this time, and Hairfield wanted to steer the income from Prior's accounts to Shenk.[3] When Prior complained to David Morgan, the Aflac coordinator for Virginia, Morgan offered to mediate a compromise arrangement, under which Prior would receive sixty percent of the commissions from the accounts and Shenk would receive forty percent. Prior rejected Morgan's proposal, claiming that because Morgan and Stephens receive bonuses based on new associate contracts, they had a direct pecuniary interest in Shenk writing new contracts in her name for the Honeywell Local 101 accounts.

In its third-party complaint, Teamsters alleges that Aflac representatives created a new policy group comprised of members of eight local Teamsters unions, known as Joint Council 83, and offered a wider range of policies at lower rates to members within this group if Shenk, not Prior, wrote the new policies. Teamsters claims that *Aflac's* conduct caused Prior's damages, and brings this action to implead Aflac under a theory of contribution.

## II. DISCUSSION

### A. Contribution under Virginia Law

#### 1. Intentional Torts

"The right of contribution is based on the equitable principle that when two or more persons are subject to a common burden, their responsibility shall be borne equally." *Sullivan v. Robertson Drug Co.*, 273 Va. 84, 91, 639 S.E.2d 250 (2007) (citing *Nationwide Mut. Ins. Co. v. Minnifield*, 213 Va. 797, 800, 196 S.E.2d 75 (1973)). A party forfeits the right to contribution, however, where the joint liability arises not from negligence but "out of an act involving moral

---

[3] The complaint values the Honeywell Aflac accounts at $480,000 in annual premiums, but it does not indicate what portion of this amount Prior kept as sales commissions.

3

turpitude or a voluntary tort." *Hudgins v. Jones*, 205 Va. 495, 501, 138 S.E.2d 16 (1964); *see also E.I. Dupont De Nemours & Co. v. Kolon Indus., Inc.*, 688 F. Supp. 2d 443, 464 (E.D. Va. 2009) ("[C]ontribution among wrongdoers may only be enforced when 'the wrong results from negligence and involves no moral turpitude.'") (quoting Va. Code Ann. § 8.01-34).

Teamsters seeks contribution from Aflac for Prior's tortious interference and business conspiracy claims. Tortious interference with a contract constitutes a voluntary or intentional tort. *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 218, 754 S.E.2d 313 (2014); *see also Dupont*, 688 F. Supp. 2d at 465 (including tortious interference in a list of "intentional misconduct"). Violation of the Virginia Business Conspiracy Statute also constitutes an intentional tort, as it requires "willful[] and malicious[]" actions. Va. Code Ann. § 18.2-499; *see also Ford Motor Co. v. Nat'l Indem. Co.*, 972 F. Supp. 2d 850, 856 (E.D. Va. 2013) (including "intentional interference" as a required element of a claim).

Both of Teamsters' state law claims constitute intentional torts, for which Virginia law does not permit contribution. For this reason, Teamsters' state law contribution claims fail as a matter of law.

*2. Liability to the Original Plaintiff*

The state law contribution claim fails for a second reason. Virginia law permits contribution only where both the party seeking contribution and the party from whom contribution is sought are liable to a third party for the same indivisible injury. *Kohl's Dept. Stores, Inc. v. Target Stores, Inc.*, 214 F.R.D. 406, 414 (E.D. Va. 2003). This rule ensures that the contribution statute, § 8.01-34, "does not create any greater liability than existed before its enactment." *Id.* (quoting *Va. Elec. & Power Co. v. Wilson*, 221 Va. 979, 981, 277 S.E.2d 149

(1981)). A party, therefore, that cannot be liable to a first-party plaintiff as a matter of law cannot be held liable to a third-party plaintiff in an action for contribution.

Prior cannot hold Aflac liable on either a tortious interference or business conspiracy claim. Under Virginia law, a person cannot intentionally interfere with his own contract. *Fox v. Deese*, 234 Va. 412, 427, 362 S.E.2d 699 (1987); *see also Storey v. Patient First Corp.*, 207 F. Supp. 2d 431, 448 (E.D. Va. 2002) ("In the jurisprudence of tortious interference, it is axiomatic that a party cannot interfere with his own contract."). Aflac is a party to the contracts at issue with Prior and with the individual policy-holders. Teamsters, then, may not assert a third-party claim for tortious interference against Aflac.

Regarding the conspiracy claim, "a conspiracy merely to breach a contract that does not involve an independent duty arising outside the contract is insufficient to establish a civil claim under Code § 18.2-500." *Station #2, LLC v. Lynch*, 280 Va. 166, 174, 695 S.E.2d 537 (2010) ("To permit a mere breach of contract to constitute an 'unlawful act' for the purposes of the conspiracy statute would be inconsistent with the diligence we have exercised to prevent 'turning every breach of contract into an actionable claim for fraud.'") (citations omitted). Prior's original complaint did not contend that Aflac acted unlawfully toward Prior in any way. Absent any independently unlawful conduct, Prior could not assert a claim for business conspiracy against Aflac. Teamsters, then, may not assert a third-party business conspiracy claim against Aflac.

### B. Contribution under RICO

#### 1. No Express or Implied Right

The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-68, does not provide either an express or implied right to contribution. *City of Hudson v.*

*Janiszewski*, 351 F. App'x 662, 666-67 (3d Cir. 2009). Although the Fourth Circuit has not directly addressed this issue, every district court opinion located by this Court has reached this conclusion. "The text of the RICO statute does not explicitly permit defendants in civil RICO actions to obtain either contribution or indemnity from third parties, and courts have consistently held that no such right exists." *Freedman v. Hartman*, 787 F. Supp. 411, 415 (S.D.N.Y. 1992) (listing ten district court opinions from six states).[4]

Several of these courts have applied the reasoning of *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 101 S. Ct. 2061 (1981), in which the Supreme Court held that federal antitrust statutes do not provide a right to contribution. The antitrust treble damages provisions are analogous to those in RICO, and both statutes "reveal an intent to punish past, and to deter future, unlawful conduct." *Freedman*, 787 F. Supp. at 416 (citing *Tex. Indus., Inc.*, 451 U.S. at 639-40). This clearly reflects Congress's lack of concern with "softening the blow on joint wrongdoers in this setting," which contribution would do if available to a RICO defendant. *Id.* at 416-17. Furthermore, RICO's "comprehensive legislative scheme and integrated system of procedures for enforcement" clearly indicate that Congress did not intend courts to have the power to supplement the enacted remedies with contribution. *Id.* at 417 (quoting *Tex. Indus., Inc.*, 451 U.S. at 645).

Teamsters seeks contribution from Aflac for Prior's RICO claim. Because the RICO statute does not provide either an express or implied right to contribution, Teamsters action for contribution under RICO fails as a matter of law.

---

[4] *See also Andrews v. Fitzgerald*, No. C-89-649-G, 1992 WL 159766, at *1-2 (M.D.N.C. Feb. 7, 1992) (dismissing all third-party plaintiffs' claims for contribution under RICO and stating that "[c]ourts directly addressing the issue have held that there is no right to indemnity or contribution under RICO"); *First Fin. Sav. Bank, Inc. v. Am. Bankers Ins. Co. of Fla., Inc.*, No. 88-33-CIV-5-H, 1990 WL 260541, at *13-14 (E.D.N.C. July 5, 1990) ("It is also well established that there is no right to contribution under the federal RICO statute.").

*2. No Predicate Offense*

Additionally, Teamsters cannot sue for contribution under RICO because Aflac cannot commit the predicate offense alleged in Prior's complaint as a matter of law. A violation of § 1962(c), which Prior alleges against the four first-party defendants, requires (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S. Ct. 3275 (1985). To survive, a RICO claim must allege an overt act prohibited under the statute. *Beck v. Prupis*, 529 U.S. 494, 507, 120 S. Ct. 1608 (2000).

Prior's only allegation of racketeering activity involves a violation of 29 U.S.C. § 186. This statute prohibits payments by an employer or its labor relations consultant to an officer or employee of a labor organization. 29 U.S.C. § 186(a)(2).[5] The purpose of this portion of the statute, enacted as § 302(a) of the Labor Management Relations Act ("LMRA"), is to deter and punish bribery by employers of employee union representatives, so as to protect the integrity of the collective bargaining process. *Arroyo v. United States*, 359 U.S. 419, 425-26, 79 S. Ct. 864 (1959). Consistent with this purpose, an entity that does not directly employ members of the relevant union cannot violate the LMRA if it makes a payment or confers some benefit upon a union officer or employee. *United States v. Cody*, 722 F.2d 1052, 1058 (3d Cir. 1983).

Here, the relevant employer is Honeywell, not Aflac. The Teamsters union represents Honeywell employees, not Aflac contractors. If a union employee earns income from the sales

---

[5] Specifically, the statute reads:
    (a) It shall be unlawful for any employer or . . . labor relations expert, adviser, or consultant to an employer or who acts in the interest of an employer to pay, lend, or deliver, or agree to pay, lend, or deliver, any money or other thing of value . . . (2) to any labor organization, or any officer or employee thereof, which represents, seeks to represent, or would admit to membership, any of the employees of such employer who are employed in an industry affecting commerce.
29 U.S.C. § 186(a)(2).

7

of Aflac insurance policies, such payments from Aflac to the union employee do not violate the LMRA. Aflac, then, cannot as a matter of law violate the LMRA if one of its contractors also works as a union employee. Only Honeywell and Teamsters have entered into a collective bargaining agreement, the integrity of which the LMRA was intended to protect. Lastly, Aflac does not act as a "labor relations consultant" to Honeywell, and thus is not covered by that portion of the statute.

If Aflac cannot violate the LMRA as a matter of law, it cannot be liable to Prior under the original complaint for a violation of RICO. Absent any possible liability to Prior under RICO, Teamsters may not seek contribution from Aflac on Prior's RICO claim.

### III. CONCLUSION

When a third-party defendant has no right to relief under applicable substantive law, "the impleader claim must be dismissed." 6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1446 n.14 (3d ed. 2010). For the reasons articulated above, Teamsters does not have a right to contribution under applicable Virginia or federal law.

Although Teamsters' contribution claims fail, it may assert any theory underlying the third-party claims as a defense to the main claims. *Watergate Landmark Condo. Unit Owners Ass'n v. Wiss, Janey, Elstner Assocs., Inc.*, 117 F.R.D. 576, 579 (E.D. Va. 1987).

Accordingly, this Court GRANTS Aflac's motion to dismiss Teamsters' third-party complaint.

The Court will enter an appropriate order.

Let the Clerk send a copy of this Opinion to all counsel of record.

Date: February 4, 2015
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge